UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKEAL GLENN STINE, | No. 2:18-cv-0684 KJN P |
| Plaintiff, | |
| v. | ORDER |
| BUREAU OF PRISONS, et al., | |
| Defendants. | |

I. Introduction

Plaintiff is a federal prisoner, proceeding pro se. Plaintiff filed a civil rights action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis is granted.

Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly

payments of twenty percent of the preceding month's income credited to plaintiff's trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

II. Background

By separate order, the undersigned severed plaintiff's second claim from the operative pleading, and transferred the second claim to the District of Colorado. Therefore, this order addresses only plaintiff's first and third claims in his amended complaint.

III. Screening Standards[1]

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably

---

[1] "Actions under § 1983 and those under Bivens are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991) (borrowing state personal-injury statute of limitations for Bivens action); see also Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006); cf. Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (order) (applying rule of Heck v. Humphrey, 512 U.S. 477 (1994) to Bivens action)); Alexander v. Perrill, 916 F.2d 1392, 1396 (9th Cir. 1990) (stating that failure to perform a duty creates liability under both § 1983 and Bivens); F.E. Trotter, Inc. v. Watkins, 869 F.2d 1312, 1318 (9th Cir. 1989) (stating that immunities are analyzed the same under § 1983 and Bivens).

2

meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

IV. Plaintiff's Allegations

On March 29, 2018, plaintiff filed a complaint alleging that various officials with the Bureau of Prisons ("BOP") violated plaintiff's rights to due process and wrongfully validated him as an Aryan Brotherhood gang member in retaliation for plaintiff filing federal complaints and administrative filings. As causes of action, plaintiff alleged failure to protect, intentional interference with access to the courts, and cruel and unusual punishment in violation of the Eighth Amendment. (ECF No. 1 at 6.)

On May 14, 2018, plaintiff filed a first amended complaint. Fed. R. Civ. P. 15. In his first claim, plaintiff renewed his claim that his due process rights were violated by the alleged wrongful gang validation, which he claims was done in retaliation for his various federal court and administrative filings, and without any process. Specifically, plaintiff alleges that in August of 2017, the SIU/Sacramento BOP validated plaintiff as a current member of the Aryan

3

Brotherhood, which plaintiff contends "is a well-planned plan to have [him] killed," and "ensures that plaintiff is kept indefinitely in the ADX Supermax."[2] (ECF No. 6 at 6.) As causes of action, plaintiff marked the boxes "access to the court," "threat to safety," and "Other: failure to protect," but plaintiff also included "interference with access to the courts; cruel and unusual punishment, and conspiracy allegations. (ECF No. 6 at 5, 6.) Plaintiff also claims he can adduce evidence showing he is not a member of the Aryan Brotherhood, appending Warden Oliver's memo stating that "investigations have revealed [plaintiff] is not a validated [gang] member." (ECF No. 1 at 23.)

In his third claim, plaintiff claims that defendants Inch, Mitchell, Winters, and the BOP Western and Central Offices refused to tell plaintiff the address for SIU in Sacramento, or to provide the unit supervisor's name, so that plaintiff can name the proper defendant and service of process accomplished. Plaintiff states that BOP policy provides that all facility addresses and staff names will be provided upon request, especially for litigation purposes. Plaintiff argues that their refusal to provide such information shows their intent to interfere with his court access.

V. Discussion

    A. Improper Defendants

Plaintiff names a number of improper defendants. A Bivens action will not lie against the United States, or agencies of the United States. See FDIC v. Meyer, 510 U.S. 471, 484, 486 (1994) (the Supreme Court refused to extend Bivens remedies from individuals to agencies); Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007); Vaccaro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996). Here, plaintiff names the BOP, Western Regional Office; the Federal BOP; the United States Department of Justice; and the SIU/Sacramento, BOP, as defendants. Because each of these named defendants are agencies of

---

[2] By contrast, plaintiff contends his name is first on the transfer list, on which he's been listed since 2015, to be transferred to a non-federal facility because his safety is in jeopardy at the ADX. The request for plaintiff's re-designation is dated December 12, 2014, and states that the request was made "on the basis that inmate Stine would not be able to successfully progress through the Step-Down Program at [the ADX] due to his difficult interaction with other inmates." (ECF No. 6 at 30.) Because such re-designation pre-dates plaintiff's 2017 gang validation, any challenge to the impending transfer must be pursued in a court in Colorado.

the United States, plaintiff may not name them as defendants in a Bivens action. Such defendants are dismissed without leave to amend.

In addition, plaintiff names "John Doe, Unknown Persons," as a defendant.

The Ninth Circuit has held that where a defendant's identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities or that the complaint would be dismissed on other grounds. Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).

Here, plaintiff does not identify each defendant doe and his or her alleged act committed which plaintiff contends violated his constitutional rights. This lack of information is insufficient to put prospective defendants on notice of their alleged actions or omissions that plaintiff claims violate his federal rights. In order to link these doe defendants to the alleged acts or omissions that demonstrate a violation of plaintiff's federal rights, plaintiff is granted leave to amend, to either name the defendants involved, or list the doe defendants involved. If plaintiff can only list these defendants as John Doe, plaintiff must identify the John Doe as best as possible, and allege specific acts that these doe defendants did, such as "John Doe 1 did X" and "John Doe 2 and 3 did Y." Plaintiff is reminded that "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). For example, plaintiff might name John Doe, SIU, BOP, Sacramento, and allege he validated plaintiff as an Aryan Brotherhood gang member in August of 2017.

B. Due Process: Gang Validation

Plaintiff alleges that his due process rights were violated when he was validated as a member of the Aryan Brotherhood despite evidence that he is not a member; specifically, plaintiff alleges he was provided no due process in connection with the gang validation, and has evidence demonstrating he is not a gang member.

The Fourteenth Amendment's due process clause encompasses both substantive and procedural protections. See Zinermon v. Burch, 494 U.S. 113, 125-28 (1990). As a substantive

matter, due process requires that gang validations by prison officials be supported by "some evidence" that bears "some indicia of reliability." Castro v. Terhune, 712 F.3d 1304 n.4 (9th Cir. 2013) (citing Superintendent v. Hill, 472 U.S. 445, 455 (1985) and Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003)). The Ninth Circuit has explained that "[u]nder Hill, we do not examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" Bruce, 351 F.3d at 1287. Procedural due process "requires that the prison officials provide the inmate with 'some notice of the charges against him and an opportunity to present [the inmate's] views to the prison official charged with deciding whether to transfer [the inmate] to administrative segregation" as well as notice of any adverse decision. Barnett v. Centoni, 31 F.3d 813 (9th Cir. 1994); see also Wilkinson v. Austin, 545 U.S. 209, 229 (2005).

The related assignment of a prisoner to segregated housing meets federal procedural due process standards if the prisoner has "'an opportunity to present his views' to the official 'charged with deciding whether to transfer him to administrative segregation.'" Toussaint v. McCarthy, 926 F.2d 800, 803 (9th Cir. 1990) (Toussaint IV) (quoting Hewitt v. Helms, 459 U.S. 460, 476 (1983)). Prison officials must (1) hold an informal non-adversarial hearing within a reasonable time after the prisoner is initially segregated, (2) inform the prisoner of the reasons for segregation, and (3) allow the prisoner to present his views. Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986) (Toussaint III). However, "the due process clause does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." Id. at 1100-01. Following a prisoner's initial placement in administrative segregation, prison officials must periodically review the appropriateness of the confinement. Id. at 1101-02.

Because plaintiff alleges that he received no due process prior to his gang validation, apparently receiving no hearing, no reasons for the validation, and no opportunity to present his views, and also alleges that the decision to validate him as a gang member was premised on information he can prove is invalid, all of which caused him injury, plaintiff does state potential

6

federal due process claims.  See, e.g., Tapia v. Alameida, 2006 WL 842470 (E.D. Cal. 2006) (permitting prisoner to proceed on his due process claim that the periodic reviews were "meaningless gestures" because "conducted by committees that did not have the authority to make any changes to plaintiff's validation and resulting housing assignment"); accord, Madrid v. Gomez, 889 F.Supp. 1146, 1276 (N.D. Cal. 1995) (perfunctory ICC and IGI hearings "violate the fundamental tenet of due process that opportunities to be heard must be granted;" such hearings must be conducted "in a meaningful manner"); see also Toussaint III, 801 F.2d at 1101-02 ("substantive criteria" for justifying administrative segregation "assure that plaintiffs' due process rights are not meaningless gestures").

That said, plaintiff has failed to name a defendant responsible for the gang validation. As explained below, plaintiff will be able to discover the identities of the SIU officers in Sacramento who allegedly validated him as a gang member. But plaintiff may also name officials at the ADX Supermax who were responsible for ensuring the validity of the factors relied upon to maintain the gang validation or to retain plaintiff in maximum custody. For example, in exhibits provided with plaintiff's original complaint, plaintiff identifies two individuals, Warden J. Oliver, and Case Manager J. Osland, who might be responsible for ensuring the validity of such factors.[3] See Springfield v. Singh, 2015 WL 1348141 (E.D. Cal. March 24, 2015) (named officials, including the warden, "were responsible for ensuring the validity of the factors relied upon to maintain plaintiff in maximum custody;" thus, prisoner stated cognizable federal due process claims).

////

---

[3] A December 12, 2014 memo from Warden J. Oliver requested that plaintiff be redesignated to "boarding in a non-federal facility," due to plaintiff's classification as a high security level inmate with maximum custody, and his "difficult interaction with other inmates," as well as other inmates who identify plaintiff as cooperating with the government and law enforcement. (ECF No. 1 at 23.) Warden Oliver stated that "[d]espite his claims of being a member of the Aryan Brotherhood (AB), investigations have revealed [plaintiff] is not a validated member. Inmate Stine's prior court orders recommend inmate Stine not be placed near his prior associates." (ECF No. 1 at 23.) Also, on October 13, 2017, J. Osland, Case Manager, issued a Notification of Central Inmate Monitoring ("CIM"), informing plaintiff that he was classified as a CIM case, validated as an Aryan Brotherhood member, and require the CIM Assignment of Disruptive Group Aryan Brotherhood. (ECF No. 1 at 28.) Based on plaintiff's current offense, he was assigned the CIM Assignment of Threat to Government Officials, and require separation from individuals incarcerated with the Bureau of Prisons for plaintiff's "mutual protection." (ECF No. 1 at 28.)

On the other hand, plaintiff alleges that defendants Inch, Revell, and Winters "all knew and had unrefutable evidence that plaintiff is not a current member of the Aryan Brotherhood." (ECF No. 6 at 6.) But such generalized allegation is insufficient to demonstrate a connection or link to plaintiff's alleged wrongful gang validation. Moreover, defendant Inch is located in Washington, D.C., and defendants Revell and Winters are located in Kansas City, Kansas. Here, plaintiff alleges he was wrongfully validated by unknown individuals at the SIU in Sacramento. Plaintiff alleges no facts demonstrating that these defendants, located far away from Sacramento and Colorado, where plaintiff is incarcerated, were involved with the alleged gang validation. Any notice these defendants received after the alleged wrongful gang validation is insufficient to demonstrate their involvement, their responsibility for providing plaintiff process in connection therewith, or even their awareness at the time of the alleged validation.

### C. Retaliation

In addition, plaintiff states that he was validated as a gang member in retaliation for his court and administrative filings.

Retaliation by a state or federal actor for the exercise of a constitutional right is actionable even if the act, when taken for different reasons, would have been proper. See Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate[4] (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). To show that the adverse action was taken because of protected conduct,[5] there must be evidence linking the alleged retaliation to the exercise of a

---

[4] For purposes of evaluating a retaliation claim, an adverse action is action that "could chill a person of ordinary firmness from continuing to engage in the protected activity[ ]." Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006). See also White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).

[5] Prisoners have a constitutional right to file prison grievances and pursue civil rights litigation in the courts. See Rhodes, 408 F.3d at 567. Prison officials may not retaliate against prisoners for

8

constitutional right. See Mt. Healthy, 429 U.S. at 287 ("[I]n this case, the burden was properly placed upon [the plaintiff] to show that his conduct was constitutionally protected, and that this conduct was a 'substantial factor' or to put it in other words, that it was a 'motivating factor' in the [alleged retaliatory conduct]"); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). However, retaliation may also be inferred from the timing and nature of the alleged retaliatory activities. Pratt, 65 F.3d at 808 (citing Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989)).

The Ninth Circuit has found that preserving institutional order, discipline and security are legitimate penological goals which, if they provide the motivation for an official act taken, will defeat a claim of retaliation. Barnett, 31 F.3d at 816; Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in terms of the legitimate policies and goals of the correctional institution in the preservation of internal order and discipline, maintenance of institutional security, and rehabilitation of prisoners."). The burden is thus on plaintiff to allege and demonstrate that legitimate correctional purposes did not motivate the actions by prison officials about which he complains. See Pratt, 65 F.3d at 808 ("[Plaintiff] must show that there were no legitimate correctional purposes motivating the actions he complains of.").

Here, plaintiff's generalized assertion regarding retaliation is insufficient to demonstrate that each named defendant retaliated against plaintiff for his protected conduct. Rather, plaintiff must allege specific facts as to each named defendant that addresses each element required under Rhodes. Plaintiff is granted leave to amend in an attempt to state a retaliation claim against the appropriate defendants.

D. Conspiracy

Plaintiff includes vague claims of an alleged conspiracy to violate plaintiff's constitutional rights, to use "known untrue" evidence to validate plaintiff as a gang member, and to have plaintiff killed.

---

exercising these rights. Id. at 568; see also Hines v. Gomez, 108 F.3d 265, 267 (9th Cir. 1997).

To state a claim for conspiracy to violate constitutional rights, the plaintiff must state specific facts to support the existence of the claimed conspiracy." Olsen v. Idaho State Board of Medicine, 363 F.3d 916, 929 (9th Cir. 2004). A conspiracy claim brought under § 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

Here, plaintiff's amended complaint fails to allege facts supporting an agreement among the named defendants to violate plaintiff's rights. This is especially true inasmuch as plaintiff names defendants who are employed at various locations across the country, including Sacramento, Washington, D.C., and Kansas City, Kansas. Plaintiff must identify the persons plaintiff alleges conspired, and with whom, as well as allege facts supporting the existence of an agreement to violate plaintiff's rights. Given the geographic distances involved, it is unclear whether plaintiff can allege such facts.

E. Eighth Amendment Claims

In his amended complaint, plaintiff marked the boxes "threat to safety" and "Other: Failure to Protect," despite the instructions that plaintiff check only one box. Plaintiff also included, *inter alia*, cruel and unusual punishment as an issue in claim one. Prisoners are instructed to check only one box and to state additional issues in separate claims so that defendants and the court can determine the factual allegations supporting each cause of action. Here, because the focus of plaintiff's first claim is the violation of plaintiff's due process rights in validating him as a gang member, and because it is the violation that allegedly occurred within this court's jurisdiction, the court is unable to determine whether plaintiff can state cognizable

////

claims based on such issues. Accordingly, plaintiff is provided the following legal standards governing such claims.

A "failure to protect" claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate. . . safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," evidence must exist to show the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted). Under an Eighth Amendment failure to protect claim, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and wellbeing of the prisoner. Id. at 832-33; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

"Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." Hoptowit v. Ray, 682 F.2d 1237, 1250 (9th Cir. 1982), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). To state a claim under § 1983 for threat to safety, an inmate must allege facts to support that he was incarcerated under conditions posing a substantial risk of harm and that prison officials were "deliberately indifferent" to those risks. Farmer, 511 U.S. at 832-33. To adequately allege deliberate indifference, a plaintiff must allege facts to support that a defendant knew of, but disregarded, an excessive risk to inmate safety. Id. at 837. That is, "the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference." Id.

F. Interference with Court Access

Plaintiff also refers to "court access" and "interference with court access" as causes of action in connection with claim one, but he includes no factual allegations supporting such a

11

claim in connection with the alleged violation of his due process rights in validating as a gang member.

As to his third claim, plaintiff's allegation fails to state a cognizable interference with court access claim.[6] Plaintiff does not have a constitutional right to the address of the SIU in Sacramento, or the supervisor's name. However, plaintiff may seek such information through discovery in this action once an operative pleading has been served and any defendant has filed an answer.[7] Indeed, the filing of this action demonstrates that plaintiff's court access was not impeded. Plaintiff shall not include this claim in any amended pleading.

### G. Improper Joinder

As plaintiff was informed in the May 25, 2018 order, his second claim was severed and transferred to Colorado because it was wholly unrelated to plaintiff's due process claim. (ECF No. 8 at 2 n.1.) Plaintiff is cautioned that this action proceeds on plaintiff's claim that his due process rights were violated when he was wrongfully validated as a gang member. Plaintiff may amend his complaint to name appropriate defendants in connection with such claim. Plaintiff is also granted leave to amend to state other causes of action so long as they are related to plaintiff's due process claim concerning his gang validation. This court is without jurisdiction to hear conditions of confinement claims concerning plaintiff's incarceration in Colorado.

////

////

---

[6] Prisoners have a constitutional right of access to the courts. Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977), limited in part on other grounds by Lewis, 518 U.S. at 354. The right of access to the courts is limited to non-frivolous direct criminal appeals, habeas corpus proceedings, and § 1983 actions. See Lewis, 518 U.S. at 353 n.3, 354-55. In order to frame a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. Lewis, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." Lewis, 518 U.S. at 348 (citation and internal quotations omitted); see also Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (noting that "[f]ailure to show that a 'non-frivolous legal claim had been frustrated' is fatal" to a claim for denial of access to legal materials) (citing Lewis, 518 U.S. at 353 & n.4).

[7] Plaintiff's request for court order to obtain such information is denied as premature. (ECF No. 1 at 29-33.)

12

VI. Leave to Amend

As discussed above, plaintiff's amended complaint must be dismissed. However, the court grants leave to file a second amended complaint to pursue his claim that his due process rights were violated when he was validated as a gang member. Plaintiff may plead other causes of action only if he can demonstrate such claims meet the requirements of Rule 20 of the Federal Rules of Civil Procedure.[8] If plaintiff pleads other causes of action, he shall plead them separately from his due process claim.

Plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files a second amended complaint, the original pleading no longer serves any function in the case. Therefore, in a second amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

Plaintiff is not required to provide exhibits. The exhibits provided with plaintiff's prior pleadings will remain on file and may be referred to by any party.

Finally, plaintiff is not required to cite cases or other legal authority to support his claims. Rather, plaintiff must set forth specific facts describing what each defendant did or did not do that violated his rights. No legal arguments are required. Plaintiff must file his second amended

---

[8] A plaintiff may properly assert multiple claims against a single defendant. Fed. Rule Civ. P. 18. In addition, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants must be pursued in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George, 507 F.3d at 607.

complaint on the court's form provided.

VII. <u>Motion to Seal and Mark Orders as "Legal Mail"</u>

Plaintiff argues that because the BOP now uses an electronic law library, all inmates can access and read plaintiff's complaint which he alleges contains serious and sensitive information that can allegedly jeopardize the security of the ADX, plaintiff, and his witnesses. (ECF No. 1 at 34-38.) Plaintiff asks the court to seal his original complaint and mark all court orders as "legal mail." (<u>Id.</u>)

Local Rule 141(a) provides that "[d]ocuments may be sealed only upon written order of the Court." In general, there is a strong presumption in favor of public access to court records. <u>See</u> <u>Phillips v. Gen. Motors Corp.</u>, 307 F.3d 1206, 1210 (9th Cir. 2002). However, "access to judicial records is not absolute." <u>Kamakana v. City & Cnty. of Honolulu</u>, 447 F.3d 1172, 1178 (9th Cir. 2006). Accordingly, a party may request the court seal certain documents upon a showing that such a request is warranted. In determining what standard to apply to requests to seal, the Ninth Circuit Court of Appeals distinguishes between non-dispositive and dispositive motions. <u>Id.</u> at 1180.

Here, plaintiff's seeks to seal his entire pleading. Such request to seal is overbroad. To the extent such filing is considered non-dispositive, plaintiff must demonstrate "good cause." <u>Id.</u> This requirement is because the public's interest in non-dispositive materials is weaker than its interest in dispositive materials, which require the existence of "compelling reasons" before they may be sealed. <u>Id.</u>; <u>Pintos v. Pac. Creditors Ass'n</u>, 605 F.3d 665, 678 (9th Cir. 2010). To satisfy the "good cause" standard, "the party seeking protection bears the burden of showing specific prejudice or harm will result" if the request to seal is denied. <u>Phillips</u>, 307 F.3d at 1210-11. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. <u>Beckman Indus., Inc. v. Int'l Ins. Co.</u>, 966 F.2d 470, 476 (9th Cir. 1992) (quoting <u>Cipollone v. Liggett Grp., Inc.</u>, 785 F.2d 1108, 1121 (3d Cir. 1986)).

////

////

////

14

Here, plaintiff alleges broad and generalized threats of harm from "inmates." Thus, plaintiff fails to meet the threshold standard required to seal specific documents, let alone an entire complaint.[9] Plaintiff's motion is denied. (ECF No. 1 at 34-38.)

VIII. Motion to Communicate With Inmates

On May 24, 2018, plaintiff signed a document styled, "motion for injunctive order to defendants." (ECF No. 10.) Plaintiff seeks an order requiring the Bureau of Prisons to allow plaintiff to communicate with 21 other federal prisoners.

Plaintiff's motion is premature for two reasons. First, plaintiff's second claim was transferred to the District of Colorado on May 25, 2018. It is unclear which inmate witnesses have testimony pertinent to plaintiff's second claim. Plaintiff must seek leave to communicate with those witnesses in the action filed in the District of Colorado, Case No. 1:18-cv-01331.

Second, plaintiff's motion to communicate with witnesses who have testimony pertinent to those claims remaining in this action is premature because plaintiff's complaint is dismissed with leave to amend. Once plaintiff has an operative complaint on file, and defendants have filed an answer, the court will issue a discovery and scheduling order. At that time, plaintiff may file a motion to communicate with inmate witnesses, provided each witness has pertinent testimony relevant to claims proceeding in this action.

---

[9] In addition, court records reflect plaintiff's situation is a matter of public record. A court may take judicial notice of court records. See MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986). In Stine v. BOP, No. 1:13-cv-1883 AWI MJS (E.D. Cal. Sept. 9, 2015), the district court noted multiple court cases brought by plaintiff in which he alleges he is at risk of being killed. Id. In one, Stine v. Federal BOP, 2010 WL 3276196, *2 (D. Col. Aug. 17, 2010), plaintiff argued that he was an ex-member of the Aryan Brotherhood and has cooperated with law enforcement against its members. Id. In addressing whether plaintiff faced imminent danger of serious physical injury, the court found that: "(1) ADX Florence is the most secure facility in the Bureau of Prisons; (2) inmates in the General Population or Special Housing Units are separated by a barred grille and if interaction occurs outside of a cell, the inmate is restrained; (3) at no time are inmates allowed to move within the institution without some form of supervision and they generally remain in their cells twenty-one to twenty-three hour per day; (4) recreation is conducted in separate areas that are separated from another inmate's recreation area by heavy-duty fencing; and (5) meals, programming and showering take place in an inmate's cell." Stine v. BOP, No. 1:13-cv-1883 AWI MJS at 8, quoting Stine v. Federal BOP, 2010 WL 3276195 at *2. Thus, plaintiff's connection with the Aryan Brotherhood and his relationship with law enforcement is already part of the public record, and he is housed in a very secure setting.

For these reasons, plaintiff's motion to communicate with witnesses is denied without prejudice.

IX. Conclusion

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Federal Correctional Institution filed concurrently herewith.

3. Plaintiff's amended complaint is dismissed.

4. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Amendment and submit the following documents to the court:

   a. The completed Notice of Amendment; and

   b. An original and one copy of the Second Amended Complaint.

Plaintiff's second amended complaint shall be filed on the court's complaint form, and shall comply with the requirements of the instant order, the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. The second amended complaint must also bear the docket number assigned to this case and must be labeled "Second Amended Complaint."

Failure to file a second amended complaint in accordance with this order may result in the dismissal of this action.

5. The Clerk of the Court shall send plaintiff the form for filing a civil rights action.

6. Plaintiff's request (ECF No. 1 at 29-33) is denied without prejudice.

7. Plaintiff's motion (ECF No. 1 at 34-38) is denied.

8. Plaintiff's motion (ECF No. 10) is denied without prejudice.

Dated: June 7, 2018

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/stin0684.14

16

|   |   |
|---|---|
| UNITED STATES DISTRICT COURT | |
| FOR THE EASTERN DISTRICT OF CALIFORNIA | |

| | |
|---|---|
| MIKEAL GLENN STINE,<br><br>        Plaintiff,<br><br>  v.<br><br>BUREAU OF PRISONS, et al.,<br><br>        Defendants. | No. 2:18-cv-0684 KJN P<br><br><br><br>NOTICE OF AMENDMENT |

Plaintiff hereby submits the following document in compliance with the court's order filed_____.

_____ Second Amended Complaint
DATED:

                                                                  _____
                                                                  Plaintiff