UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKEAL GLENN STINE, | No. 2:18-cv-0684 TLN KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| BUREAU OF PRISONS, et al.,[1] | |
| Defendants. | |

Plaintiff is a federal prisoner, proceeding pro se, with an action brought under <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). On October 26, 2018, plaintiff filed a notice of voluntary dismissal under Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, and the case was dismissed on October 31, 2018. On May 8, 2019, plaintiff's motion to withdraw the voluntary dismissal of this case was denied without prejudice to its renewal accompanied by a proposed fourth amended complaint. Thereafter, plaintiff filed a timely motion to withdraw the voluntary dismissal, followed by a motion to reopen the case and fourth amended complaint.

////

---

[1] No defendant has been served with process. At the time plaintiff filed this action, he was housed at the Florence ADMAX ("ADX") U.S. Penitentiary in Florence, Colorado. Subsequently, plaintiff was transferred to Terre Haute Federal Correctional Institution in Terre Haute, Indiana. (ECF No. 42.)

As set forth below, the undersigned construes plaintiff's filings as motions for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure, and recommends the motions be denied, and this action remain closed.

I. Motions for Relief

    A. Plaintiff's Claims

In his motion to withdraw the dismissal, plaintiff claims that on October 18, 2018, ADX officials advised plaintiff that "several things would be done," apparently resolving all issues, so plaintiff filed the voluntary dismissal. However, once plaintiff arrived at USP-Terre Haute, plaintiff learned that "none of the things told to plaintiff are as stated and therefore none of the issues are resolved." (ECF No. 49 at 2.) Thus, plaintiff requests the court to allow him to withdraw the voluntary dismissal and move forward on his verified emergency motion for temporary restraining order. (Id.) Plaintiff contends that defendants "advised mistruths" to get plaintiff to dismiss this case. (ECF No. 49 at 3.) In his subsequent renewed motion, plaintiff contends defendants reneged on the terms worked out to obtain voluntary dismissal of this case.

    B. Governing Standards

Rule 41(a)(1)(A)(i) provides an action may be voluntarily dismissed without a court order through the filing of "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgement." Id. Voluntary dismissal of an action without prejudice results in a final order from which relief can be requested pursuant to Rule 60(b). See In re Hunter, 66 F.3d 1002, 1004-05 (9th Cir. 1995).

Rule 60(b) provides for reconsideration of a final judgment or any order where one of more of the following is shown: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which, with reasonable diligence, could not have been discovered within twenty-eight days of entry of judgment; (3) fraud, misrepresentation, or misconduct of an opposing party; (4) voiding of the judgment; (5) satisfaction of the judgment; and (6) any other reason justifying relief. Fed. R. Civ. P. 60(b). A motion for reconsideration on any of these grounds must be brought within a reasonable time, and no later than one year, of the entry of the judgment or the order being challenged. Id.

C. Discussion

The court finds plaintiff's motions for relief are too vague and conclusory to determine whether plaintiff is entitled to relief from his voluntary request that this case be dismissed under any of the subsections of Rule 60. For example, it is unclear whether a named defendant was involved in either negotiating the "several things" that were supposed to occur, or that a named defendant committed "fraud, misrepresentation or misconduct." To the extent plaintiff settled his claims with certain federal staff, it appears such agreement was not reduced to writing, but in any event the court was not privy to the particular terms of any such agreement.

Nevertheless, even assuming plaintiff could demonstrate he was entitled to have this case reopened, it appears futile as a matter of law for plaintiff to proceed with his fourth amended complaint.

II. Bivens Action

In his fourth amended complaint, plaintiff claims that on or about October 13, 2017, his case manager served plaintiff with gang validation papers notifying plaintiff that the SIU Sacramento office had determined plaintiff was a gang member. (ECF No. 51 at 3.) Plaintiff alleges that the validation process was secret, and he was not provided a hearing or allowed to make a statement. Plaintiff names as defendants three Federal Bureau of Prisons Directors (ECF No. 51 at 2), alleging each was personally involved in plaintiff's improper validation, despite knowing plaintiff was not a gang member. Plaintiff claims defendants "were mad at [him] for litigations, a protected right." (ECF No. 51 at 5.) Plaintiff seeks money damages for the defendants' violation of plaintiff's due process rights, and seeks an order imposing new procedures for gang validation. (ECF No. 51 at 8.)

A. Legal Standards Applicable to a Bivens Action

Plaintiffs who seek to allege claims for redress of the deprivation of their constitutional rights by federal officers may bring an action under Bivens, 403 U.S. 388, if the claim is alleged against a federal employee in his or her individual capacity. FDIC v. Meyer, 510 U.S. 471, 485-86 (1994); Vaccaro v. Dobre, 81 F.3d 854, 856 (9th Cir. 1996). Bivens actions are identical to civil rights actions under 42 U.S.C. § 1983 except for the replacement of state actor under § 1983

3

by federal actor under Bivens. Starr v. Baca, 652 F.3d 1202, 1206 (9th Cir. 2011) ("Although more limited in some respects, a Bivens action is the federal analog to an action against state or local officials under § 1983.") (internal quotation marks omitted).

However, to date, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments. See Bivens, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishments Clause for failure to provide adequate medical treatment). The Supreme Court has made clear that "expanding the Bivens remedy is now a disfavored judicial activity," and has "consistently refused to extend Bivens to any new context or new category of defendants. Ziglar v. Abbasi, 137 S. Ct. 1843, 1857 (2017) (citations omitted). The proper test involves a consideration of Bivens cases decided by the Supreme Court, not by the Courts of Appeals. Ziglar, 137 S. Ct. at 1859 ("If the case is different in a meaningful way from previous Bivens cases decided by this Court, then the context is new.").

Courts employ a two-part test to determine whether Bivens should be extended: first, the court reviews Supreme Court authority to determine whether the plaintiff seeks a Bivens remedy in a new context. If not, the action proceeds. If so, the court evaluates whether special factors counsel the court's hesitation in extending Bivens, including "whether there were alternative remedies available." Ziglar, 137 S. Ct. at 1859-60, 1865; see also Lanuza v. Love, 899 F.3d 1019, 1031n.7 (9th Cir. 2018) ("We read [Ziglar's] special-factors analysis as encompassing all circumstances that counsel against extending a Bivens remedy, including" alternative remedies). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Id. at 1858.

B. Discussion

In his fourth amended complaint, plaintiff renews his Bivens claims that his due process rights were violated during his validation as a gang member in 2017, and mentions retaliation, but

////

////

4

only pleads a due process claim.² In an abundance of caution, the undersigned considers both plaintiff's due process claim, as well as a putative retaliation claim. Therefore, the undersigned must determine whether such claims attempt to extend Bivens to a new context, and, if so, whether special factors counsel against such an extension. Ziglar, 137 S. Ct. at 1858.

1. New Context

As set forth above, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments. Ziglar, 137 S. Ct. at 1860 (Supreme Court has approved three Bivens claims in the past: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma.") (internal citations omitted). Thus, it appears plaintiff's due process and First Amendment retaliation claims do not fall within such contexts.

The Supreme Court has not recognized a Bivens remedy for a Fifth Amendment due process claim related to the alleged failure to a prison official to provide due process. See Buenrostro v. Fajardo, 2017 WL 6033469, at *3 (E.D. Cal. Dec. 5, 2017) (declining to find an implied Bivens cause of action for Fifth Amendment due process or for First Amendment retaliation), subsequently aff'd sub nom. Luis Buenrostro v. Fajardo, 770 F. App'x 807 (9th Cir. 2019). Indeed, the Supreme Court has consistently declined to expand an implied right of action to procedural and substantive due process claims. Vega v. United States, 881 F.3d 1146, 1152 n.2 (2018) (discussing FDIC v. Meyer, 510 U.S. at 473-74 (procedural due process)); Schweiker v. Chilicky, 487 U.S. 412, 414 (1988) (procedural due process); United States v. Stanley, 483 U.S. 669, 671-72 (1987) (substantive due process); Chappell v. Wallace, 462 U.S. 296, 297, 304-05 (1983) (substantive due process).³

---

² The court earlier provided plaintiff the elements required to state a retaliation claim (ECF No. 12 at 8-9), but he did not allege a retaliation cause of action (ECF No. 51 at 1-8).

³ The Ninth Circuit has extended Bivens to a Fifth Amendment procedural due process claim. In Lanuza, 899 F.3d 1019. However, the Supreme Court instructs that Bivens cases are decided by reviewing only Supreme Court decisions. Ziglar, 137 S. Ct. at 1859. In any event, Lanuza differs in a meaningful way from plaintiff's claims because Lanuza involved a government attorney's

5

Moreover, the Supreme Court "ha[s] never held that Bivens extends to First Amendment claims." See Reichle v. Howards, 566 U.S. 658, 663 n.4 (2012) (holding First Amendment right to be free from retaliatory arrest for speech, even if arrest otherwise supported by probable cause, not clearly established at time of arrest).[4]  No Supreme Court case has recognized a Bivens remedy in the context of gang validation.

Because plaintiff's claims present new contexts under Bivens, the undersigned must consider any special factors cautioning against such an extension of Bivens.

### 2. Special Factors

The Supreme Court's precedents "now make clear that a Bivens remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" Ziglar, 137 S. Ct. at 1857.  Such inquiry includes "whether there were other alternative remedies available or other 'sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy' in a suit like this one." Ziglar, 137 S. Ct. at 1865, quoting id. at 1859.

Here, plaintiff had alternative remedies available.  First, plaintiff had access to the Administrative Remedy Program, which allows "an inmate to seek formal review of an issue relating to any aspect of his . . . own confinement." 28 C.F.R. § 542.10(a).  Plaintiff has confirmed that on or about July 10, 2018, he was advised that his gang status was downgraded to gang associate.  (ECF No. 28 at 2.)  But even if plaintiff was unsuccessful in obtaining relief through such program "does not mean that he did not have access to alternative or meaningful remedies." Vega, 881 F.3d at 1155.

Second, plaintiff may seek injunctive relief in an effort to accomplish policy changes. "[U]nlike the Bivens remedy, which [the Supreme Court has] never considered a proper vehicle

---

intentional forgery of immigration documents.  See id., 899 F.3d at 1021.

[4]  The Ninth Circuit previously authorized Bivens claims based on the First Amendment. Gibson v. United States, 781 F.2d 1334 (9th Cir. 1986).  But Gibson pre-dated Ziglar, and thus does not control. Ziglar, 137 S. Ct. at 1859; see also Vega, 881 F.3d at 1153 (First Amendment access to courts and Fifth Amendment procedural due process claims present new contexts under Bivens and declined to extend Bivens remedies).

6

for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 74 (2001). See also Ziglar, 137 S. Ct. at 1862-63 (noting that unlike Bivens, "in which 'it is damages or nothing,'" plaintiffs may seek injunctive relief for "large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners"); Zavala v. Rios, 721 F. App'x 720, 721-22 (9th Cir. 2018) ("Under Ziglar, an extension of Bivens is not available here because . . . Zavala may seek injunctive and declaratory relief."), cert. denied, 139 S. Ct. 464 (2018).

Such alternative remedies support this court's finding that a Bivens remedy should not be extended. "[A]n alternative remedy need not be 'perfectly congruent' with Bivens or 'perfectly comprehensive[.]'" Rodriguez v. Swartz, 899 F.3d 719, 739 (9th Cir. 2018) (citations and footnotes omitted). "So long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." Malesko, 534 U.S. at 69.

In addition, the undersigned is persuaded that the lack of Congressional action in this area is a special factor that also counsels hesitation by this court. As the Supreme Court noted in Ziglar, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id., 137 S. Ct. at 1865. In 1995, Congress passed the Prison Litigation Reform Act, stating "in dicta that the Act's exhaustion provisions would apply to Bivens suits," yet provided no "standalone damages remedy against federal jailers." Ziglar, 137 S. Ct. at 1865. As another magistrate judge noted, Congress acted "with the intent to 'reduce the quantity of inmate suits.'" Reid v. United States, 2018 WL 1588264 (E.D. Cal. Apr. 2, 2018), quoting Jones v. Bock, 549 U.S. 199, 223 (2007). Thus, the undersigned finds that inaction by Congress also counsels hesitation in extending Bivens to the contexts presented here.

Finally, extending Bivens remedies to plaintiff's claims against national and regional directors of the Bureau of Prisons "undermines the purpose of Bivens liability -- to deter individual government officers, not their supervisors or the agency, from engaging in unconstitutional conduct." Schwarz v. Meinberg, 761 F. App'x 732, 735 (9th Cir. 2019), cert.

denied, 2019 WL 5686563 (U.S. Nov. 4, 2019).[5]  As in Schwarz, extending Bivens to plaintiff's claims "would substantially affect government operations and unduly burden BOP officials who must defend against this suit in their personal capacities." Schwarz, 761 F. App'x at 735.

As discussed above, plaintiff's claims arise in new Bivens contexts and special factors counsel hesitation in creating new implied Bivens causes of action.  Because plaintiff cannot amend to bring a Bivens claim in these contexts, granting plaintiff further leave to amend is futile.  See Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011) (setting forth standard of review and explaining that dismissal without leave to amend is proper when amendment would be futile).

III.  Current Alleged Threats

In his proposed fourth amended complaint, plaintiff renews his claims that he has been attacked since his transfer to Terre Haute Federal Correctional Institution.  However, as plaintiff was previously been informed, any complaint concerning his current conditions of confinement in Terre Haute, Indiana, must be brought in an appropriate court in Indiana.  (ECF Nos. 45; 47 (allegations based on 2019 incidents in Terre Haute are wholly unrelated to plaintiff's due process claim challenging his 2017 gang validation, and this court has no jurisdiction over such claims).)

IV.  Conclusion

Accordingly, IT IS HEREBY RECOMMENDED that plaintiff's motions to withdraw the voluntary dismissal and to reopen this action (ECF Nos. 49, 50) be denied, and this action remain closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, plaintiff may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that

---

[5] In a prior amended complaint, plaintiff alleged, under penalty of perjury, that the SIU/Sacramento BOP validated plaintiff as a gang member in August of 2017.  (ECF No. 6 at 6; 12 at 3-4.)

failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 16, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/stin0684.60b